# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CYNTHIA SHIVELY,

    Plaintiff,

    *v.*

UNITED STATES, et al.,

    Defendants.

Case No.: 2:24-cv-02447-AWM-GEB

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant United States' Motion to Dismiss, or in the Alternative, for Summary Judgment. Doc. 70. Finding that Plaintiff's claims are subject to the Federal Tort Claims Act's discretionary function exception, this Court grants Defendant United States' Motion, enters judgment for the United States, and dismisses all remaining claims without prejudice.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arises from a car accident on March 25, 2022. Doc. 27. Plaintiff Cynthia Shively was in the passenger seat of her husband's pickup truck on Pomona Dam Road near Highway 268 when it struck a guardrail, which penetrated the truck, resulting in severe injury to Plaintiff. Doc. 27. In her Second Amended Complaint, Plaintiff brought claims of failure to warn of a dangerous condition and negligence against Defendant United States under the Federal Tort Claims Act and Defendant Osage County, Kansas ("Osage County") under the Kansas Tort Claims Act. Doc. 27. Plaintiff alleges that "the United States and/or Osage County installed or directed the installation of the guardrail

along Pomona Dam Road" in violation of federal law's prohibition of blunt end terminal guardrails and/or thereby creating or maintaining a dangerous condition. Doc. 27 ¶ 18.

Defendant United States filed the present Motion on the basis that the Federal Tort Claims Act's (FTCA) discretionary function exception deprives this Court of subject matter jurisdiction over Plaintiff's claims. Doc. 70. Plaintiff countered that the United States contractually obligated itself to comply with the mandates of "A Policy on Geometric Design of Rural Highways," issued by the American Association of State Highway Officials (the AASHO Policy) in 1954, and failed to do so when installing the guardrail. Doc. 77, 77–7. Additionally, Plaintiff argued that the United States replaced the guardrail in 2017 or 2018, and that the United States failed to comply with the Federal Highway Administration's 1994 guidance and 2015 memorandum, banning blunt end terminal guardrails at that time. Doc. 77.

## II.  RELEVANT MATERIAL FACTS

In 1961, the United States and Osage County entered into a contract (identified as Contract No. DA-23-028-CIVENG-61-278) for construction of the Pomona Dam (the Contract), in which Osage County agreed to assume maintenance of the Pomona Dam Road and all related appurtenances upon completion. Doc. 19; Doc. 77 ¶ 39. The U.S. Army Corps of Engineers (USACE) designed and managed construction of the Pomona Dam project, which was completed in 1964. Doc. 70 ¶¶ 5–7; Doc. 34–1. Osage County maintained the Pomona Dam Road and all appurtenances after their completion, in accordance with the Contract. Doc. 19, 32.

The guardrail at issue in this case was modified on two occasions. Doc. 77 ¶ 58. In 1984, the USACE resurfaced Pomona Dam Road and replaced the wooden guardrail posts with steel posts. Doc. 77–11; Doc. 71–26.

In 2017, a truck towing a camper trailer on Pomona Dam Road collided with the guardrail, damaging it and the end terminal. Doc. 71–26; Doc. 77–14. Osage County's Public Works Director Glen Tyson testified that he made the decision to restore the damaged guardrail to the original USACE specifications without improvement. Doc. 71–26 ¶ 15. Tyson further testified that he made the decision not to add signage or warnings to the guardrail or surrounding area. Doc. 70–26 ¶ 18. The USACE did not repair or replace the guardrail after the 2017 accident. Doc. 70–2 ¶ 10.

## III.  LEGAL STANDARD

When a jurisdictional question is "intertwined with the merits of the case," a Rule 12(b)(1) motion converts to a motion under Rule 12(b)(6) or Rule 56. *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987). A motion based on the FTCA's discretionary function exception and involving matters outside of the pleadings, as in this case, is properly treated as a motion for summary judgment under Rule 56. *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997).

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008). In applying this standard, the court views the evidence and all reasonable inferences in a light most favorable to the nonmoving party. *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010). There is no genuine dispute of material fact when no reasonable

3

jury, construing the evidence in the light most favorable to the nonmoving party, could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

The moving party must show the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)); *Anderson*, 477 U.S. at 256. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256. Instead, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 670–71. In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* at 671. A genuine issue of material fact must be supported by "more than a mere scintilla of evidence." *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).

## IV. ANALYSIS

The United States cannot be sued without its consent. *Iowa Tribe Of Kansas & Nebraska v. Salazar*, 607 F.3d 1225, 1232 (10th Cir. 2010). Unless the United States has waived sovereign immunity, this Court lacks subject matter jurisdiction over a claim against it. *Id.*

The FTCA waives sovereign immunity for some injuries caused by government employees acting within the scope of their employment. 28 U.S.C. § 2671 *et seq.* Congress created exceptions to the FTCA's waiver of immunity, including for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). When a defendant raises the discretionary function exception, the plaintiff must establish subject matter jurisdiction as a prerequisite to suit. *Garcia v. United States Air Force*, 533 F.3d 1170, 1175 (10th Cir. 2008).

In *Berkovitz v. United States*, the Supreme Court set forth a two-part test for the discretionary function exception. 486 U.S. 531, 536 (1988). First, the court determines whether the governmental conduct at issue was "discretionary," or in other words, a "matter of choice for the acting employee." *Id.* at 536. Governmental conduct is not discretionary when "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.*

If the challenged governmental conduct is found to be discretionary, the court proceeds to the second step and determines whether the challenged conduct involves the exercise of policy judgment of a social, economic, or political nature. *Id.* at 536–37. This analysis focuses on the nature of the conduct, not the employee's subjective intent. *Garcia*, 533 F.3d at 1176. A failure to act, or even a failure to consider acting, "can be a policy decision." *Duke by Duke v. Dep't of Agric.*, 131 F.3d 1407, 1410 (10th Cir. 1997).

Unlike a regulation, an agency manual is "not necessarily entitled to the force and effect of law." *Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998). This is

especially true when the issuing agency did not intend the manual as mandatory but instead as guidance or advisory. *Id.*

### A. The United States' Alleged Conduct Was Discretionary.

Plaintiff alleges that the United States installed or directed installation of the guardrail at issue with a blunt end terminal and failed to warn of the dangerous condition. Doc. 27. The United States argues that its decisions regarding design, installation, and maintenance of the guardrail, as well as decisions not to install warning signs, were "the result of balancing of factors including safety, cost and aesthetics." Doc. 70 at 12.

Plaintiff asserts that the United States contractually obligated itself to comply with the AASHO Policy, which it alleges was violated, and that failure to replace or modify the guardrail violated the Federal Highway Administration's (FHWA) guidance from 1994 and 2015. The Court addresses each of these points in turn.

### i. The Contract fails to obligate the United States to strictly comply with the recommendations in the AASHO Policy.

In certain cases, the federal government's "voluntarily assumed contractual obligations can impose nondiscretionary duties on government employees." *Bell v. United States*, 127 F.3d 1226, 1229 (10th Cir. 1997). In *Bell v. United States*, the New Mexico Interstate Stream Commission contracted with a third party to modify the dam in "strict accordance" with the Department of Interior's Bureau of Reclamation's specifications and supervised by the Bureau. *Id.* at 1227. The Bureau's specifications stated that the contractor "shall" either temporarily or permanently relocate the water pipeline. *Id.* at 1227-28. During the work, the Bureau's construction engineer allowed the contractor to leave the water pipeline in place and not relocate it, even temporarily.

*Id.* at 1228. The Bureau claimed immunity under the discretionary function exception. *Id.* The plaintiffs argued that the Bureau contractually assumed a duty to supervise the project in strict compliance with its own specifications. *Id.* at 1229. The Tenth Circuit agreed with the plaintiffs in *Bell*, holding that the government voluntarily assumed a contractual duty to ensure removal of the water pipeline and that the specifications prescribed a course of action, leaving no discretion or element of choice. *Id.* at 1230.

Here, Plaintiff admits that the AASHO Policy functions as guidance and does not obligate the government specifically to act. Doc. 77 at 12. However, Plaintiff claims that the United States contractually obligated itself to comply with the AASHO Policy. Doc. 77. The Contract's mandate, according to Plaintiff, is contained in a single sentence: "The design criteria *shall, in general, conform with* 'A Policy on Geometric Design of Rural Highways' as published by the American Association of State Highway Officials, dated 1954, and the current standard practice of the Owner." Doc. 77–2 (emphasis added).

This language, that the design "shall, *in general*, conform with" the AASHO Policy and Osage County's current practice, fails to contractually obligate the United States to strictly comply with any suggestions or recommendations in the AASHO Policy. Unlike the language in *Bell*, the Contract did not require the United States to strictly comply with suggestions in the AASHO Policy, but instead to conform with the AASHO Policy and Osage County's standard practice "in general." Doc. 77–2. Based on the Contract's terms, the United States could fulfill its obligations under the Contract without strictly complying with the AASHO Policy. Accordingly, the United States did not contractually obligate itself to comply with all recommendations in the AASHO Policy.

### ii.    The AASHO Policy fails to prescribe a specific, mandatory course of conduct.

Even when a policy uses mandatory language, if a discretionary duty requiring the weighing of factors or policy considerations is prescribed, the policy does not establish a nondiscretionary function. *Clark v. United States*, 695 F. App'x 378, 385 (10th Cir. 2017). While use of the word "should" can imply a limitation on discretion, the context may require a discretionary decision on the basis of judgment, observation, and experience. *Tippett v. United States*, 108 F.3d 1194, 1198 (10th Cir. 1997) (affirming the district court's dismissal pursuant to the discretionary function exception when the directive required the exercise of discretion).

Plaintiff contends that the United States failed to comply with the following language from the AASHO Policy:

> Except at turnouts, guardrails or guide posts *should* be located at a constant offset from the edge of pavement to avoid possible confusion in inclement weather as to their location. They *should* be located somewhat back from the usable shoulder line and at about the same elevation. *Generally,* shoulder sections *should* be widened about 2 feet where guardrails are used. It is *desirable* to flare the rail outward for a short distance on the traffic approach end in order to lessen possible direct-end impact and to provide a full view to the driver.
>
> To be fully effective, guardrails or guide posts *should* be highly visible. Well-maintained white painted assemblies with reflector buttons or reflectorized material are *suitable* treatments.

Doc. 77–7 at 5 (emphasis added).

The AASHO Policy uses "should" (rather than "must" or "shall") and "generally" describes recommendations for guardrails and guide posts. Doc. 77–7 at 4–5. The AASHO Policy does not prescribe a mandatory course of action but instead makes suggestions as to what is "desirable" or "suitable." Doc. 77–7 at 5. Assuming *arguendo*, that the United States did contractually obligate itself to comply with the AASHO Policy,

8

that policy fails to prescribe a specific, mandatory course of conduct for the government to follow.

### iii.    The Federal Highway Administration's 1994 Policy did not prescribe a specific, mandatory course of conduct.

Plaintiff alternatively relies on a September 29, 1994, FHWA Traffic Barrier Safety Policy and Guidance memorandum (FHWA 1994 Policy). Doc. 27 ¶ 19; Doc. 70–4. The FHWA 1994 Policy recommends attention to terminals and other roadside hardware to improve safety. Doc. 70–4. As to blunt end terminals, such as the one at issue in this case, the FHWA 1994 Policy recommends that "[h]ighway agencies should survey and replace any such blunt ends with crashworthy terminals." Doc. 70–4. The FHWA 1994 Policy discusses terminal replacement, acknowledging the "policy of some agencies to restore damaged features to their original condition or 'replace in-kind.'" Doc. 70–4. The FHWA Policy argues that "cost-effective analysis often favors upgrading or replacement for two reasons." Doc. 70–4.

Although the FHWA 1994 Policy recommends what highway agencies should do, it explicitly references an economic analysis, thereby acknowledging a "discretionary duty requiring the weighing of factors or policy considerations." *See Clark*, 695 F. App'x at 385. The FHWA 1994 Policy does not prescribe a mandatory course of conduct, but instead demonstrates that the duty at issue requires the exercise of discretion.

### iv.    The FHWA's 2015 memorandum fails to prescribe a mandatory course of conduct.

Finally, Plaintiff relies on the FHWA's Roadside Safety Hardware memorandum issued on May 26, 2015 (FHWA 2015 Memo). Doc. 77–12. Plaintiff relies on the following statements from the FHWA 2015 Memo:

    i.    "It is FHWA policy that roadside safety hardware installed on the National Highway System (NHS) should be in compliance with the crash testing and evaluation criteria contained in the Manual for Assessing Safety Hardware (MASH) or its predecessor the National Cooperative Highway Research Program (NCHRP) Report 350."

    ii.    "[N]on-crashworthy hardware should be removed and replaced with crashworthy roadside hardware at the earliest possible opportunity in concert with the maintenance of the roadway."

Doc. 77; Doc. 77–12. However, Plaintiff ignores key language in the FWHA 2015 Memo that indicates its advisory nature:

    i.    "We strongly recommend that you encourage the removal of pre-NCHRP-350 guardrail end terminals."

    ii.    "We strongly recommend that pre-NCHRP 350 guardrail end terminals be removed and replaced."

    iii.    "Please ask [state and local highway agencies] to review and, if necessary, update their policies, procedures, standards, and guidelines relative to the selection, installation, maintenance, and in-service evaluations of crashworthy roadside safety hardware on their roadways, specifically: . . . [r]eview standard plans and specifications to ensure that only crashworthy devices are used on the National Highway System (NHS)."

    iv.    "Finally, strongly encourage the highway agencies to increase their efforts to systematically upgrade pre-NCHRP 350 guardrail end terminals, particularly those that are on the NHS."

Doc. 77–12.

The FHWA 2015 Memo, by its own terms, makes recommendations that are advisory in nature. Recommendations to review policies and increase efforts inherently recognize a matter of judgment or choice. The strongest language in the FHWA 2015 Memo is reserved for roadside safety hardware on the National Highway System, which the parties agree Pomona Dam Road is not. Doc. 77–16 at 15. The FHWA 2015 Memo, along with the AASHO Policy and the FHWA 1994 Policy, fail to prescribe a course of action for a government employee to follow. The government conduct at issue is a matter of judgment or choice, and accordingly, the conduct is discretionary.

10

### B. The Governmental Conduct Involved Policy Judgment and Social, Political, or Economic Considerations.

The Tenth Circuit has held that governmental decisions regarding guardrails, shoulders, and related warning signs are subject to policy considerations. *Miller v. United States*, 710 F.2d 656, 665 (10th Cir. 1983). For example, when the federal government assisted the State of Utah with the construction of a bridge and approach roads, the governmental conduct involved a discretionary function. *Wright v. United States*, 568 F.2d 153, 158 (10th Cir. 1977). Other circuit courts have held that decisions to remove guardrails and not post warning signs are "susceptible to policy analysis." *Metter v. United States*, 785 F.3d 1227, 1231 (8th Cir. 2015); *Rosebush v. United States*, 119 F.3d 438, 443 (6th Cir. 1997) ("the decision whether to warn of potential danger is a protected discretionary function").

As discussed above, none of the policies identified by Plaintiff prescribe a mandatory course of conduct for the government to follow. *See Berkovitz*, 486 U.S. at 536. Thus, this Court proceeds to the second step of the *Berkovitz* analysis: whether the governmental conduct involves the exercise of policy judgment of a social, economic, or political nature. *Id.* at 536-37. The focus is not the actual government employee's subjective decision making, but the nature of the government conduct. *Garcia*, 533 F.3d at 1176.

Here, the United States designed and managed construction of the Pomona Dam project. After the project's completion, Osage County assumed maintenance of the roads and appurtenances. The decision not to replace or modify the blunt end terminal is, by its nature, subject to policy considerations. The decisions as to what guardrail to install, whether to modify or replace the guardrail at a later date, and whether to install warning

signs involve policy considerations. Namely, the decisions require weighing of the costs of such measures against their safety benefits. The nature of the governmental conduct that Plaintiff challenges involves policy judgment and weighing of factors. This conduct is the exact kind of policy decision making that the discretionary function exception was intended to protect against judicial second guessing. *Garcia*, 533 F.3d at 1175.

Because the governmental conduct was discretionary and involves the exercise of policy judgment, the FTCA's discretionary function exception applies, and this Court lacks subject matter jurisdiction over Plaintiff's claims against the United States.

### C. Lack of Subject Matter Jurisdiction over Plaintiff's Claims against the United States Deprives this Court of Jurisdiction over Plaintiff's Remaining Claims.

Without original jurisdiction, federal district courts cannot retain supplemental jurisdiction over state law claims. *Estate of Harshman v. Jackson Hole Mt. Resort Corp.*, 379 F.3d 1161, 1167 (10th Cir. 2004). Dismissal of federal tort claims and the federal defendant for lack of subject matter jurisdiction strips the district court of its original jurisdiction. *Id.*

Plaintiff's claims against Osage County rely on supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Doc. 27 ¶¶ 5, 10. This Court lacks original jurisdiction over Plaintiff's claims against the United States because of the FTCA's discretionary function exception. That lack of jurisdiction deprives the Court of jurisdiction over Plaintiff's state law claims against Osage County. Accordingly, the Court dismisses Plaintiff's claims against Osage County without prejudice.

### D. The United States' Indemnity Claim is Moot.

This Court lacks subject matter jurisdiction over claims that are moot. *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019). A case is

moot when the issues are no longer "live." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (internal citations omitted). When a plaintiff has obtained the relief sought in its complaint, the case is rendered moot. *Mukhtar v. Lambrecht*, 172 F.4th 836, 838 (10th Cir. 2026).

Here, the United States' indemnity claim against Osage County is rendered moot by the Court's finding of a lack of subject matter jurisdiction over Plaintiff's claims. Because the indemnity claim is no longer "live," it is moot, and the Court lacks jurisdiction over it. The United States' indemnity claim is dismissed without prejudice.

## V.  CONCLUSION AND ORDER

**IT IS THEREFORE ORDERED BY THE COURT** that **Defendant United States' Motion to Dismiss, or in the Alternative, for Summary Judgment** (Doc. 70) is **GRANTED**.

Because the Court lacks subject matter jurisdiction over Plaintiff's claims against Defendant United States, it also lacks subject matter jurisdiction over all remaining claims and dismisses them without prejudice.

### IT IS SO ORDERED.

Dated this 29 day of July,  2026, at Topeka, Kansas.

s/ *Anthony W. Mattivi*
Anthony W. Mattivi
United States District Judge

13